**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ROCHELLE DANIEL,

    Plaintiff,

v.                                          Case No. 11-10034

WEST ASSET MANAGEMENT, INC.,

    Defendant.

                                           /

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT AND
PLAINTIFF'S MOTION TO STRIKE AFFIDAVIT OF MARY C. FOURNIER**

On April 6, 2011, pro se Plaintiff Rochelle Daniel filed a third amended complaint alleging Defendant West Asset Management, Inc. violated the Telephone Consumer Protection Act ("TCPA"), the Fair Debt Collection Practices Act ("FDCPA"), and the Fair Credit Reporting Act ("FCRA") during the course of Defendant's efforts to collect a debt Plaintiff allegedly owed to AT&T.  Plaintiff also pled a single state-law defamation claim arising from Defendant's reporting of Plaintiff's delinquent account to a consumer reporting agency.  On June 17, 2011, the court dismissed Plaintiff's TCPA claims for failing to state a claim upon which relief could be granted.  Before the court is Defendant's motion for summary judgment on the remaining counts filed on August 3, 2011.  Plaintiff Rochelle Daniel filed a response to the motion on September 13, 2011, and Defendant replied on September 26, 2011.  After the parties fully briefed Defendant's motion, Plaintiff filed two motions: (1) a motion for leave to amend her complaint for a fourth time; and (2) a motion strike the affidavit of Mary C. Fournier, which

was attached as an exhibit to Defendant's summary judgment reply brief. After reviewing the briefs and exhibits, the court concludes that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the court will grant Defendant's motion and deny Plaintiff's.

## I. BACKGROUND

The facts underlying this case stem from Defendant's efforts to collect a debt Plaintiff purportedly owed AT&T for unreturned equipment and are largely uncontroverted.[1] In November 2009, AT&T referred Plaintiff's account to Defendant, a debt collection company, for collection. (Def.'s Mot. for Summ. J. Ex. A at ¶ 5.)[2] Defendant commenced its debt collection efforts on November 14, 2009, and sent a letter to Plaintiff on November 16, 2009, informing her that her AT&T account had been turned over to Defendant for collection, and providing Plaintiff with information on how to pay the

---

[1] Plaintiff did not adhere to this court's motion practice guidelines, as set forth in the court's June 30, 2011 "Scheduling Order." Plaintiff disregarded the court's instructions with respect to Rule 56 motions, failing to begin her response brief with a "Counter-statement of Material Facts." Instead, Plaintiff began her brief with a section entitled "Statement of Undisputed Facts" which did not even mention any of Defendant's proffered facts. Compounding this failure is Plaintiff's decision to attach Defendant's responses to her discovery requests, *in toto*. Because of Plaintiff's failure to abide by the Rule 56 motion instructions, the court is left to sift through countless pages of discovery to determine whether Plaintiff has substantiated any of her factual contentions.

[2] Plaintiff baldly alleges that Defendant "failed to provide any evidence whatsoever that a debt was owed, or that AT&T placed the debt with [Defendant] to collect." (Pl.'s Resp. to Mot. for Summ. J. at 1.) Contrary to Plaintiff's allegation, Defendant proffered the affidavits of Jill Jensen, a corporate officer of Defendant, and Mary C. Fournier, a manager of credit collections for AT&T, both of which stated that AT&T placed Plaintiff's account with Defendant for collection on November 12, 2009. (*See* Def.'s Mot. for Summ. J. Ex. A at ¶ 5; Def.'s Reply Ex. at ¶ 4.) Aside from insisting in her responsive brief that the debt was never placed with Defendant, Plaintiff has presented no evidence to controvert the affidavits of Jensen and Fournier.

debt or contest the validity of the debt. (Def.'s Mot. for Summ. J. Ex. A-2.) The letter set forth the procedure for contesting the debt, stating:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(*Id.*)

On November 27, 2009, Plaintiff made two telephone calls to Defendant and spoke with a representative of Defendant each time. (Third Am. Compl. at 2; Def.'s Mot. for Summ. J. Ex. A at ¶ 7.) During the first call, Plaintiff alleges in the complaint that she informed Defendant that she returned to AT&T the equipment that gave rise to the alleged debt, and that AT&T failed to update their records to indicate that the equipment was returned. (Third Am. Compl. at 2.) The complaint further avers that Plaintiff specifically informed Defendant's representative during the second call that she "disputed the debt, and requested debt validation," but the representative told Plaintiff that she "could not dispute over the phone and that [she] would have to dispute in writing per the collection letter." (*Id.*)[3] Despite Plaintiff's allegation that the Defendant representative stated that she could not dispute the debt over the phone, it is uncontroverted that, following the

---

[3] The court relies on the complaint for Plaintiff's version of the facts regarding the November 27, 2009 telephone calls because Plaintiff failed to offer any evidence—not even an affidavit setting forth her version of the calls—supporting her allegations. Plaintiff's only evidence relating to the calls is Defendant's records of its efforts to collect the debt. Those records show that, following Plaintiff's calls, Defendant recorded the debt as disputed.

November 27, 2009 telephone calls, Defendant documented in its records that the account was in dispute.  (Pl.'s Resp. to Mot. for Summ. J. Ex. A at 13; Def.'s Mot. for Summ. J. Ex. A at ¶ 8.)   Further, the evidence indicates that Defendant's representative informed Plaintiff during the November 27, 2009 calls that Defendant would document her account as disputed but that she would have to request verification of the debt in writing in accordance with the debt validation notice contained in the November 16, 2009 letter. (Pl.'s Resp. to Mot. for Summ. J. Ex. A at 13.)   Defendant states, and Plaintiff does not deny, that Plaintiff never submitted a written request for verification of the debt.   (Def.'s Mot. for Summ. J. Ex. A at ¶ 12.)

Following the November 27, 2009 calls, Defendant continued its attempts to collect the alleged debt, and on December 17, 2009, Defendant reported Plaintiff's allegedly delinquent account to a consumer credit agency, but indicated to the credit agency that Plaintiff disputed the debt.   (*Id.* at ¶ 9.)   As a part of Defendant's efforts to collect the debt, Defendant called Plaintiff 64 times in the approximately 133 days between November 14, 2009 and March 26, 2010, but Defendant states, and Plaintiff does not deny, that it did not call before 8:00 a.m. or after 8:00 p.m., and that Plaintiff never answered Defendant's calls or returned its voice messages.   (*Id.* at ¶ 11.)

On May 4, 2010, Defendant closed Plaintiff's account, and thereafter asked "the credit bureaus to which it regularly reports [to] delete Defendant's prior reporting of the subject Account from Plaintiff's consumer credit report."   (*Id.* at ¶¶ 13-14.)

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is "no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton,* 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at 587). Summary judgment is not appropriate when

5

"the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment—the disputed factual issue must be material. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" *Id.* at 252 (alteration in original) (citation omitted). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

### III. DISCUSSION

Plaintiff's third amended complaint originally contained 22 counts. The court dismissed Plaintiff's 14 counts alleging violations of the TCPA for failing to state a claim upon which relief could be granted. (*See* 06/14/2011 Order.) After dismissal of the TCPA counts, eight counts remain, including: (1) three FDCPA claims; (2) four FCRA claims; and (3) a state-law defamation claim related to Defendant's alleged inaccurate reporting of credit information to a consumer reporting agency. Below, the court examines each of Plaintiff's eight remaining counts and concludes that Defendant is entitled to summary judgment on each one.

### A. FDCPA Claims

The stated purpose of the FDCPA is "to eliminate abusive debt collection practice by debt collectors, to insure that those debt collectors who refrain from using abusive debt

collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Alleged violations of the FDCPA are analyzed under a "least sophisticated consumer" standard. *Smith v. Transoworld Systems, Inc.*, 953 F.2d 1025, 1028 (6th Cir. 1992). This standard "serves a dual purpose: it (1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protect debt collectors against liability for bizarre or idiosyncratic interpretations of collective notices." *Gionis v. Javitch, Block & Rathbone, LLP,* No. 06-3048, 238 F. App'x 24, 28 (6th Cir. 2007) (internal quotation marks and citation omitted). The "least sophisticated consumer" standard is "lower than simply examining whether particular language would deceive or mislead a reasonable consumer." *Smith*, 167 F.3d at 1052.

*1. Failure to Provide Verification of Debt in Violation of 15 U.S.C. § 1692g(b)*

In count XV, Plaintiff avers that Defendant's failure to verify the AT&T debt and its subsequent collection activities after Plaintiff telephonically disputed the debt on November 27, 2009 violated 15 U.S.C. § 1692g(b).  Section 1692g(b) provides, in pertinent part,

> If the consumer notifies the debt collector *in writing* within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b) (emphasis added).  Defendant argues that because it never received a written notice of dispute, its duty to cease collection activities and provide

Plaintiff with verification of the debt was never triggered. Plaintiff does not dispute Defendant's averment that it never received a written notice from Plaintiff, and she does not allege that she ever disputed the debt in writing. Instead, Plaintiff claims that the FDCPA permits a consumer to verbally dispute a debt and does not require the dispute to be memorialized in writing in order to trigger a debt collector's verification duty.

Plaintiff's argument is foreclosed by the plain language of § 1692g(b). "Under section 1692g(b) a consumer *must dispute a debt in writing*, within an initial thirty-day period, in order to trigger a debt validation process." *Brady v. Credit Recovery Co.*, 160 F.3d 64 (1st Cir. 1998) (emphasis added); *see also Lipa v. Asset Acceptance, LLC*, 572 F. Supp. 2d 841, 854 (E.D. Mich. 2008) ("[Section 1692g(b)] makes clear the rule that the consumer's rights (to validation of the debt) and the collector's responsibilities (to validate the debt and cease collection activities) are not triggered unless the consumer files a request for validation within thirty days of receiving notice of the debt." (citation omitted)). Section 1692g(b) unequivocally states that a consumer must dispute the debt in writing in order to trigger a collector's responsibility to verify the debt. Because Plaintiff has failed to come forward with any evidence—or even aver in her complaint—that she disputed the debt in writing as the statute unambiguously requires, Defendant is entitled to summary judgment on the § 1692g(b) claim.

### *2. Engaging in Harassing, Oppressive, or Abusive Collection Activities in Violation of 15 U.S.C. § 1692d(5)*

Defendant is also entitled to summary judgment on count XVI, Plaintiff's § 1692d(5) claim. In support of her § 1692d(5) claim, Plaintiff alleges that Defendant

8

"continually called and annoyed Plaintiff" in violation of the FDCPA.  (Compl. Count XVI.) Section 1692d(5) provides:

> a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this Section:
>
> . . .
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

15 U.S.C. § 1692d(5).  "To determine whether [Defendant's] calls amount to harassment, annoyance or abuse, the volume of calls must be examined along with the pattern in which they were made and whether or not they were accompanied by oppressive conduct."  *Pugliese v. Prof. Recovery Serv., Inc.*, No. 09-12262, 2010 WL 2632562, at *9 (E.D. Mich. June 29, 2010.) (citing *Akalwaldi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 505 (D. Md. 2004).  Plaintiff carries the burden of proving that the collection calls were in violation of § 1692d(5).  *Kerwin Remittance Assistance Corp.*, 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008).

Defendant argues that Plaintiff has failed to raise a genuine issue for trial because "Plaintiff has offered no indication on the number of calls, the time of calls, the content of any conversations occurring during such calls, or any other information that might reveal a § 1692d violation."  (Def.'s Mot. for Summ. J. at 8.)  Indeed, the only evidence in the record before the court to support Plaintiff's allegation that Defendant's collection activities were harassing, oppressive, or abusive, is Defendant's own admission that it placed 67 calls to Plaintiff during an approximately six month period.  (Def.'s Mot. for

9

Summ. J. Ex. A at ¶ 11.) But the volume of calls alone does not establish a violation of § 1692d(5). *See Pugliese*, 2010 WL 2632562 at *9. Plaintiff must offer evidence beyond the mere number of calls to support her allegation that the telephone calls were harassing, oppressive, or abusive. Here, the only evidence offered related to the nature and pattern of calls is Defendant's uncontroverted evidence that it never placed a call before 8:00 a.m. or after 8:00 p.m., nor did it ever immediately call Plaintiff back after speaking with her or ending a prior call. (Def.'s Mot. for Summ. J. Ex. A at ¶ 11.) In fact, Plaintiff never answered a call from Defendant, and the only telephonic contact Defendant had with Plaintiff were the two calls placed by Plaintiff to Defendant on November 27, 2009. (*Id.*) Because Plaintiff has failed to proffer *any* evidence to show that Defendant's collection activities were harassing, oppressive, or abusive, Plaintiff has not carried her burden of showing that a genuine issue of fact exists for trial. Therefore, summary judgment will be granted in favor Defendant on Plaintiff's § 1692d(5) claim.

*3. Failure to Provide Written Notification of Debt and*
*Verification Instructions in Violation of 15 U.S.C. § 1692g(a)*

Plaintiff's final FDCPA claim, count XVII, charges Defendant with violating the requirements of notice set forth in § 1692g. Under § 1692g(a), a debt collector must provide written notice to a consumer disclosing the name of the creditor, the amount owed, and instructions on how to dispute the debt or request validation of the debt. 15 U.S.C. § 1692g(a). Specifically, § 1692g(a) states:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

10

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692a(1)-(5). It is undisputed that Defendant's November 16, 2009 letter satisfied the requirements of § 1692g(a).[4] However, Plaintiff's claim is founded on her belief that the November 27, 2009 telephone calls, not the November 16, 2009 letter, were the "initial communication" described in § 1692g(a), and the Defendant was required to send a written notice within five days of the November 27, 2009 calls. (*See* Pl.'s Resp.

---

[4] Defendant's notice recites, almost verbatim, subsections (3)-(5) of § 1692g(a), and provides the name of the creditor and the amount owed. (*See* Def.'s Mot. for Summ. J. Ex. A-2.) In pertinent part, the notice states:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(*Id.*)

to Mot. for Summ. J. at 7 ("Regardless of whether Defendant sent a validation notice within five days of its placement, it violated § 1692g(a) by not sending a notice within five days of its first communication with Plaintiff, which was on November 27, 2009.  That conversation, as the statutory 'initial communication,' was Defendant's last opportunity to comply with that provision . . . .").)

Plaintiff's assertion that she was entitled to written notice following her November 27, 2009 calls to Defendant is simply wrong.   As used in the FDCPA, the word "communication" "means the conveying of information regarding a debt directly or indirectly to any person through any medium."   15 U.S.C. § 1692a(2).   Defendant's November 16, 2009 letter was a communication as defined by the FDCPA, and the undisputed facts before the court show that the letter was the first communication Defendant had with Plaintiff.   Therefore, because the required notices were contained within the initial communication sent to Plaintiff, Plaintiff was not entitled to additional written notice following her November 27, 2009 calls with the Defendant.   Accordingly, Defendant is entitled to summary judgment on Plaintiff's § 1692g(a) claim.

### B. FCRA Claims

In counts XVIII-XXI, Plaintiff asserts four claims against Defendant for alleged violations of 15 U.S.C. § 1681s-2(a).[5]   The purpose of the FCRA is to

---

[5] The third-amended complaint does not clearly state that Plaintiff's FCRA claims are founded on violations of 15 U.S.C. 1681s-2(a), merely stating under each FCRA count that Defendant violated § 623 of the FCRA.   In her response, however, Plaintiff unambiguously captions her FCRA claims as "Plaintiff's FCRA Claims Pursuant to § 1681s-2(a)," and admits that "violations of § 1681s-2(a) can only be enforced by government agencies."   (Pl.'s Resp. to Mot. for Summ. J. at 6.)

> require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C. § 1681(b). Section 1681s-2(a), the provision allegedly violated by Defendant, requires "furnishers of information" to provide truthful information to consumer reporting agencies. See 15 U.S.C. § 1681s-2(a). It is unnecessary for the court to decide whether Defendant is a furnisher of information under the FCRA or whether Defendant provided untruthful information to a consumer reporting agency because § 1681s-2(a) does not create a private right of action. *Yaldu v. Bank of Am. Corp.*, 700 F.Supp.2d 832, 842 (E.D. Mich. 2010) ("There can be no doubt that the duties imposed by 15 U.S.C. § 1681s-2(a) can only be enforced by government agencies and officials." (citation omitted)). Thus, Plaintiff is unable to maintain her FCRA claims and summary judgment will be granted in favor of Defendant.

### C. State-law Defamation Claim

Plaintiff's final claim, count XXII, is a state-law defamation claim arising from Defendant's reporting of Plaintiff's delinquent account with AT&T to a consumer reporting agency. Plaintiff alleges that "Defendant was given a high degree of awareness of the debt['s] probable falsity, yet the Defendant reported the defamatory information [to the consumer reporting agency] with a reckless disregard for the truth." (Pl.'s Resp. to Mot. for Summ. J. at 4.) Defendant argues that the defamation claim is preempted by 15 U.S.C. § 1681t(b)(1)(F). This provision provides, in pertinent part, that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject

13

matter regulated under . . . section § 1681s-2, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." 15 U.S.C. § 1681t(b)(1)(F). Plaintiff, however, contends that her defamation claim is permitted under a separate FCRA provision, 15 U.S.C. § 1681h(e), which states:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). District Courts in this circuit have acknowledged the potential conflict between § 1681t(b)(1)(F) and § 1681h(e), with one court recently observing that "either of these two statutory provisions can be applied to state law defamation claims, but with differing results. Defamation claims are permitted under § 1681h(e), but with a higher standard of proof; defamation claims are . . . completely barred under § 1681t(b)(1)(F)." *Elsady v. Rapid Global Business Solutions, Inc.*, No. 09-11659, 2010 WL 742900, at *5 (E.D. Mich. Feb. 26, 2010); *see also Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 784 (W.D. Ky. 2003) ("[T]he FCRA contains two overlapping and potentially contradictory preemption provisions."). The Sixth Circuit has not addressed the potential conflict between the two statutory sections and district courts have been unable to reach a consensus on how to reconcile two provisions. *See Elsady*, 2010 WL 742900 at *5 (reviewing three distinct approaches courts have used to reconcile the purported conflict).

14

The court concludes that it is unnecessary to enter the ongoing debate about the interplay between these two FCRA provisions because only § 1681t(b)(1)(F) is applicable to the facts of this case. In *Ross v. Federal Deposit Insurance Corp.*, 625 F.3d 808 (4th Cir. 2010), the Fourth Circuit observed that it did not need to reach the issue of the alleged conflict between the two FCRA preemption provisions where the plaintiff was unable to first show that his state-law defamation claim was within the scope of § 1681h(e). *Id.* at 814. By its plain language, § 1681h(e) applies only to defamation, invasion of privacy, or negligence claims "based on information disclosed pursuant to section 1681g, 1681h, or 1681m . . . or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action . . . ." *See* 15 U.S.C. § 1681h(e); *Ross*, 625 F.3d at 814. Sections 1681g and 1681h apply only to consumer reporting agencies, and § 1681m applies only to users of consumer reports. *Ross*, 625 F.3d at 814. Plaintiff, in her complaint, unambiguously alleges that Defendant is an information furnisher, not a consumer reporting agency or a user of consumer reports, and therefore Defendant is not subject to the regulations of §§1681g, 1681h, and 1681m. (Compl. Count XII ("WAM, a collection agency and under the FCRA is an information furnisher [sic] . . . .").) Further, Plaintiff does not allege, nor do the facts before the court suggest, that Defendant used Plaintiff's consumer report or took adverse action based on information in Plaintiff's report. Accordingly, Plaintiff has failed to show that her defamation claim "is based on information disclosed pursuant to section 1681g, 1681h, or 1681m . . . or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action," and thus § 1681h(e) is inapplicable to the defamation claim.

Plaintiff's defamation claim *is* subject to and preempted by § 1681t(b)(1)(F) because Plaintiff clearly avers that the defamatory conduct of Defendant arose from Defendant's alleged inaccurate reporting of credit information to a consumer reporting agency. A defamation claim that "appears to fit squarely within section 1681s-2" because "it stems directly from the allegedly inaccurate credit reporting by the Defendant" is preempted by § 1681t(b)(1)(F). *Barkho v. Homecomings Fin. LLC*, 657 F. Supp. 2d 857, 865 (E.D. Mich. 2009); *see also Chungag v. Wells Fargo Bank*, No. 10-14648, 2011 WL 672229, at *5 (E.D. Mich. Feb. 17, 2011). Therefore, the defamation claim is preempted by 15 U.S.C. § 1681t(b)(1)(F), and the court will grant summary judgment in favor of Defendant.

### D. PLAINTIFF'S PROPOSED FOURTH AMENDED COMPLAINT

On October 14, 2011, after the parties had fully briefed Defendant's motion for summary judgment, and a mere month before the close of discovery, Plaintiff filed a motion seeking leave to amend her complaint for a fourth time. Plaintiff's proposed fourth amended complaint seeks to dramatically alter the nature of the litigation by removing all current FCRA and FDCPA claims. In place of the 22 claims she asserted in the third amended complaint, Plaintiff asserts only two claims against Defendant in the proposed amended complaint: (1) Plaintiff's original defamation claim and (2) a single claim under a previously unmentioned FDCPA provision, 15 U.S.C. § 1692e. (Pl.'s Proposed Fourth Am. Compl.) For the reasons stated below, the court will deny Plaintiff's motion.

Amendments to pleadings are governed by Federal Rule of Civil Procedure 15. Where the time to amend pleadings as a matter of course has expired, a party may

nonetheless amend its pleadings by leave of the court, and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The courts have long recognized a policy favoring trying cases on the merits and liberally granting leave to amend when doing so does not prejudice an opposing party. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating leave should be freely given, absent factors "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment"); *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 425 (6th Cir. 1999); *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982).

As a preliminary matter, having found Plaintiff's defamation claim preempted by 15 U.S.C. § 1681t(b)(1)(F), the court concludes that the defamation claim in the proposed amended complaint is futile. Thus, the only question before the court is whether Plaintiff should be permitted to amend her complaint a fourth time to remove all claims currently asserted against Defendant, and assert a new FDCPA claim. The *Foman* factors weigh heavily against granting such permission. Taken together, the tardiness of Plaintiff's latest proposed amendment and the background of a fully-briefed motion for summary judgment on the complaint as it now exists suggests either unusual negligence or bad faith, and would unquestionably cause prejudice to Defendant. Plaintiff offers no explanation why this single FDCPA claim was not pled in any of the previous four complaints.

Defendant has already expended considerable resources briefing its motion for summary judgment, and there is no fairness to be found in rendering its efforts irrelevant

17

through a *fourth* amendment. Additionally, Plaintiff fails to offer a single explanation for failing to plead the new FDCPA claim in a previous iteration of her complaint, and fails to mention any newly discovered evidence. Indeed, the only thing new is Defendant's motion for summary judgment. The *Foman* factors overwhelmingly weigh against granting Plaintiff leave to amend. The court will deny Plaintiff's motion.

### E. Plaintiff's Motion to Strike Affidavit of Mary C. Fournier

Simultaneously with her motion seeking leave to amend, Plaintiff filed a motion to strike the affidavit of Mary Fournier, a credit manager for AT&T. Defendant attached Fournier's affidavit as an exhibit to its reply in support of its motion for summary judgment. In the affidavit, Fournier stated that she has been employed by AT&T Services, Inc., a subsidiary of AT&T, for over 31 years. (Def.'s Reply Ex. at ¶ 2.) Affiant further stated that AT&T placed Plaintiff's debt with Defendant on November 12, 2009. (*Id.* at ¶ 4.) Plaintiff identifies numerous purported flaws in Fournier's affidavit, the only relevant one being Fournier's alleged lack of personal knowledge. Under Federal Rule of Civil Procedure 56, "[a]n affidavit . . . used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Here, Fournier's affidavit satisfies the requirements of Rule 56(c)(4), and thus, Plaintiff's motion will be denied.

Fournier had personal knowledge of the facts set forth in her affidavit. "Personal knowledge . . . is not strictly limited to activities in which the declarant has personally participated . . . . [P]ersonal knowledge can come from review of the contents of files and records." *Washington Cent. R. Co., Inc. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353

18

(E.D. Wash. 1993) (citing *Londrigan v. Federal Bureau of Investigation,* 670 F.2d 1164, 1174-75 (D.C. Cir. 1981); *see also Ridenour v. Collins*, 692 F. Supp. 2d 827, 846 (S.D. Ohio 2010). Here, Fournier states that she has "access to AT&T's files and records of commercial and consumer telecommunications accounts maintained in the ordinary course of business," and that she has "knowledge regarding the placement of . . . accounts for collection with collection agencies." (Def.'s Reply Ex. at ¶ 2.) Based on Fournier's sworn statements, the court is satisfied that her affidavit is based on her personal knowledge of AT&T's records. Therefore, the affidavit does not contravene the personal knowledge requirement of Rule 56(c)(4).

Fournier's affidavit also satisfies the final two requirements of Rule 56(c)(4). First, the facts set forth in the affidavit are relevant and admissible at trial. Fournier's testimony would be admissible under Federal Rule of Evidence 803(6), which exempts from the hearsay exclusionary rule testimony of a qualified witness describing the information contained within business records kept in the regular course of business. Fed. R. Evid. 803(6). Additionally, as Defendant suggests, Fournier's statements would also be admissible as nonhearsay evidence to support Defendant's claim that it had a "good faith belief and understanding that a valid debt was placed with it for collection," and to rebut Plaintiff's "assertion that [Defendant] knowingly attempted to collect from Plaintiff a debt [Defendant] knew Plaintiff did not owe." (Def.'s Resp. To Pl.'s Mot. to Strike at 4.) Finally, the affiant is competent to testify on the matters stated. Fournier states, under penalty of perjury, that as an employee of AT&T Services, Inc., she is authorized to give the affidavit, and as the court discussed above, Fournier's statements are based on her personal knowledge of AT&T's records. Therefore, the court finds that

Fournier is competent to testify on the matters stated and the facts contained in her affidavit are admissible at trial.

The affidavit satisfies the requirements of Rule 56, and the court will deny Plaintiff's motion to strike.

### III. CONCLUSION

For the reasons stated above, Defendant is entitled to summary judgment on each of Plaintiff's counts. Plaintiff has failed to demonstrate that she should be permitted leave to amend her complaint, and has not shown that Fournier's affidavit fails to comport with the requirements of Rule 56(c)(4). Accordingly,

IT IS ORDERED that Defendant's motion for summary judgment [Dkt. # 27] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's motion for leave to amend [Dkt. # 35] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's "Motion to Strike Affidavit of Mary C. Fournier" [Dkt. # 34] is DENIED.

    s/Robert H. Cleland
    ROBERT H. CLELAND
    UNITED STATES DISTRICT JUDGE

Dated: October 28, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 28, 2011, by electronic and/or ordinary mail.

    s/Lisa Wagner
    Case Manager and Deputy Clerk
    (313) 234-5522